**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| PHILIP MORRIS USA INC.,<br><br>Plaintiff,<br><br>v.<br><br>DON ABRAM HARRIS CIGARS LLC,<br><br>Defendant. | Case No. 3:26cv820<br><br>Jury Trial Demanded |

**PLAINTIFF'S COMPLAINT**

Plaintiff Philip Morris USA, Inc. ("Philip Morris"), by counsel, hereby alleges as follows for its First Complaint against Defendant Don Abram Harris Cigars LLC ("Don Abram Harris Cigars"):

**Introduction**

1. For over 100 years, Philip Morris (and its predecessors) has used a family of MARLBORO and MARLBORO-formative trademarks to market and sell tobacco products in the United States.

2. When Philip Morris introduced MARLBORO-branded cigarettes in the United States in or around 1924, the MARLBORO brand was marketed primarily to women and MARLBORO-branded cigarettes were advertised as being "Mild as May."



3. To better appeal to men, in 1954 Philip Morris launched one of the longest-running, most successful advertising campaigns of all time—the "Marlboro® Man."




4. Philip Morris's "Marlboro® Man" campaign was an immediate success, and within 30 days of its launch, MARLBORO became the number one cigarette brand in New York. Within a few years of the launch, Philip Morris's sales skyrocketed from millions to billions of MARLBORO-branded products sold annually.

5. Today, the iconic cultural symbolism and history the "Marlboro® Man" embodied, and its immediate association among the consuming public with the MARLBORO family of brands, remain as strong as ever.

6. Philip Morris has continued to invest in its MARLBORO brands, building brand value and goodwill and dutifully policing its trademark rights.

7. Philip Morris built the MARLBORO brand into a household name, and consumers instantly recognize it and associate it with Philip Morris. The MARLBORO family of marks embodies substantial goodwill that belongs exclusively to Philip Morris in the United States.

8. Well-aware of the goodwill and fame of Philip Morris's MARLBORO brand and family of marks—as well as the unmatchable success and lasting impact of Philip Morris's "Marlboro® Man" campaign—Don Abram Harris Cigars announced a new cigar product in early 2025, which it unapologetically markets and sells under the MARLBORO MAN brand.







9. In a March 2025 video announcing the launch of its MARLBORO MAN-branded cigars, Don Abram Harris Cigars claimed to be unveiling the "real Marlboro Man."

10. More recently, Don Abram Harris Cigars announced its plan to acquire a 30,000 square foot facility "where generations of farmers once brought their tobacco for purchase by major companies such as Philip Morris USA" and claiming that "[f]rom this new location, Don Abram Harris Cigars will distribute its flagship and specialty products, including the Marlboro Man Cigar . . . ."

11. Meanwhile, in response to Philip Morris's request that it discontinue its infringing acts, Don Abram Harris Cigars (through its owner, Abram Harris) falsely claimed that the MARLBORO MAN mark "is currently owned and federally registered by Don Abram Harris Cigars" and demanded payment to discontinue use of the infringing mark.

12. With Don Abram Harris Cigars steadfast in its decision to continue infringing on and diluting Philip Morris's senior, famous MARLBORO Marks, Philip Morris had no choice but file this lawsuit and seek redress for Don Abram Harris Cigars' willful trademark infringement, unfair competition, false designation of origin, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; and common law trademark infringement and unfair competition.

**The Parties**

13. Plaintiff Philip Morris USA Inc. is a corporation organized under the laws of the Commonwealth of Virginia. Philip Morris is headquartered at 6601 West Broad Street, Richmond, VA 23230; manufactures cigarettes sold throughout the United States at its manufacturing facility in south Richmond; and sells MARLBORO-branded products throughout the United States, including in Richmond, Virginia.

14. Defendant Don Abram Harris Cigars LLC is a limited liability company organized under the laws of the State of Maryland that is registered to conduct business in several states, including the Commonwealth of Virginia. Upon information and belief, Don Abram Harris Cigars maintains a principal place of business at 1152 White Sands Drive, Lusby, Maryland, 20657.

15. Upon information and belief, Don Abram Harris Cigars LLC is a single-member LLC, non-party Abram J. Harris is its sole member, and Mr. Harris is a resident of the State of Maryland.

**Jurisdiction and Venue**

16. This Court has original jurisdiction over this Complaint for trademark infringement, unfair competition, false designation of origin, and trademark dilution involving a famous mark, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

17. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction), because the matter in controversy exceeds the sum or value of $75,000 and because, upon information and belief, there is complete diversity of citizenship between Philip Morris and Don Abram Harris Cigars.

18. This Court also has jurisdiction over all pendant state law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Don Abram Harris Cigars.

19. Don Abram Harris Cigars is subject to the personal jurisdiction of this Court, because it has sufficient minimum contacts with the Commonwealth of Virginia, including but not limited to contacts that relate specifically to the conduct at issue in this case.

20. Don Abram Harris Cigars is registered to do business in the Commonwealth.

21. Don Abram Harris Cigars maintains a website <donabramharris.com> that directly targets retailers and consumers in Virginia using the infringing and dilutive MARLBORO MAN mark.

22. Don Abram Harris Cigars maintains an online storefront on its website <donabramharris.com> through which it advertises and sells branded merchandise to consumers throughout the United States, including Virginia.

23. Don Abram Harris Cigars expressly identifies the Commonwealth of Virginia as part of its "Atlantic Territory" for sales and distribution purposes.



24. At least as of the date of filing of this Complaint, Don Abram Harris Cigars maintains an active job posting (identified as "Pending") on its website <donabramharris.com> for a "Market Development Manager" for the "Atlantic Territory." "The Market Development Manager (MDM) is responsible for getting Don Abram Harris Cigars into new retail locations—period." "This territory includes Virginia, West Virginia, Washington DC, Maryland, Delaware, New Jersey, Pennsylvania, New York, Connecticut, Rhode Island, Massachusetts, New Hampshire, Vermont, Maine . . . ."

25. At least in view of the foregoing allegations, the Eastern District of Virginia is the proper venue for this action pursuant to 28 U.S.C. § 1391(b).

**Philip Morris and the MARLBORO Family of Brands**

26. Philip Morris traces its roots back to 1847, when British tobacconist Philip Morris opened a family-owned shop on Bond Street in London, England to market and sell tobacco as well as rolled cigarettes.

27. Morris's hard work and dedication to excellence garnered significant attention and appreciation among consumers, and the business moved to a larger factory on Great Marlborough Street in London.

28. By the 1900s, the growth and success of what was once a single-shop, family-run business was so significant that Philip Morris & Co. Ltd. incorporated and opened a New York subsidiary in 1902.

29. Philip Morris's predecessor in interest first launched the MARLBORO brand in England in or around 1883, and within just a few short years of entering the U.S. market, obtained its first U.S. federal registration from the USPTO for MARLBORO on April 14, 1908.

30. While Philip Morris & Co. had already offered cigarettes for sale under the MARLBORO-formative MARLBOROUGH mark for decades overseas, the company began marketing MARLBORO cigarettes for sale in the United States in or around 1924, if not earlier. The brand grew popular quickly and enjoyed significant consumer recognition and goodwill.

31. Originally positioned as a "luxury cigarette" or "ladies' favorite," the MARLBORO brand further exploded in 1954, thanks both to the quality of the MARLBORO-branded products and the wildly successful "Marlboro® Man" advertising campaign described above and further below.

32. By 1972, MARLBORO was—and has been ever since—the best-selling brand of tobacco in the world. And for over fifty years, MARLBORO has remained the best-selling cigarette brand in the United States.

33. Within the last five years, products sold under or in connection with the MARLBORO brand have been available in thousands of stores, spanning across all 50 states.

34. Philip Morris has sold more than two billion MARLBORO-branded cigarettes in the United States in each of the last five years, with MARLBORO-branded cigarettes commanding over a 40% share of the entire United States cigarette market.

35. Although limited today by federal regulation and other legal restrictions on how and where Philip Morris can market and advertise its tobacco products, the MARLBORO brand and consumer recognition of the same remains strong.

36. By way of example only, a simple Google search for "Marlboro" reveals extensive catalogs of MARLBORO advertisements gathered and made accessible by members of the public.




37. A search for "Marlboro Man" yields similar results.




38. Before regulations regarding advertising of tobacco changed, Philip Morris engaged in both traditional (print, TV, radio, etc.) and non-traditional advertising, all of which made the MARLBORO brand instantly recognizable—and famous—in the United States, even among people who do not and/or have never smoked.

39. Philip Morris also used to invest in sports sponsorships, including Indy Car, motorcycling, and rodeo events, each of which complemented the rugged, adventurous MARLBORO brand image.

40. Simply put, Philip Morris (and its predecessors) extensively promoted and advertised the MARLBORO Marks for nearly a century. Even after making changes to how and

where it advertises MARLBORO-branded products and ensuring advertising was limited to adult tobacco consumers, the fame and recognition the MARLBORO brand has remained unchanged.

41. Philip Morris's dedication of extensive time and resources, plus its unwavering dedication to high-quality products, has earned the MARLBORO brand attention from tobacco enthusiasts and casual consumers alike, while also ensuring that MARLBORO-branded products are instantly recognizable to the consuming public in the United States.

42. The MARLBORO Marks embody significant goodwill and popularity that belongs exclusively to Philip Morris in the United States.

43. In fact, the MARLBORO Marks are so recognizable by the general consuming public that they rank high among the few brands that can truly be considered household names, *i.e.*, famous.

44. Additionally, independent blogs and news articles frequently laud the quality of MARLBORO products and the brand's rich history and impact on the United States as a whole.

**Philip Morris's Federal Registrations**
**for the Famous MARLBORO Marks**

45. Understanding the significant goodwill embodied in, and truly unique consumer-recognition of, the MARLBORO brand, Philip Morris has sought, obtained and maintained twenty-nine (29) registrations for the famous MARLBORO Mark as well as the famous MARLBORO-formative marks.

46. As of today, Philip Morris owns the following MARLBORO Marks:

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
| Marlboro | 68,502 | Cl. 34: CIGARETTES | Apr. 14, 1908 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
| <br><br>MARLBORO FILTER CIGARETTES LONG SIZE | 632,881 | Cl. 34: CIGARETTES | Aug. 14, 1956 | No |
| <br><br>MARLBORO MENTHOL FILTER CIGARETTES VENI-VIDI-VICI PM INC. | 854,007 | Cl. 34: CIGARETTES | Aug. 06, 1968 | Yes |
| <br><br>MARLBORO FILTER CIGARETTES | 1,039,413 | Cl. 34: CIGARETTES | May 11, 1976 | Yes |
| <br><br>MARLBORO MENTHOL PM INC | 1,544,782 | Cl. 34: CIGARETTES | June 20, 1989 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
|   MARLBORO FILTER CIGARETTES PM USA 20 CLASS A CIGARETTES | 1,651,628 | Cl. 34: cigarettes | Jul. 23, 1991 | Yes |
| Marlboro SMOOTH | 3,289,675 | Cl. 34: Cigarettes | Sept.11, 2007 | Yes |
|   MENTHOL PM USA MARLBORO SMOOTH UNIQUELY RICH & SMOOTH | 3,289,673 | Cl. 34: Cigarettes | Sept. 11, 2007 | Yes |
| MARLBORO SMOOTH | 3,289,674 | Cl. 34: Cigarettes | Sept. 11, 2007 | Yes |
| MARLBORO VIRGINIA BLEND | 3,395,596 | Cl. 34: Cigarettes | Mar. 11, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
| <br>MENTHOL PM USA MARLBORO SMOOTH UNIQUELY RICH & SMOOTH | 3,407,884 | Cl. 34: Cigarettes | Apr. 08, 2008 | Yes |
| <br>FINE TOBACCOS MARLBORO VIRGINIA BLEND 100'S 20 CLASS A CIGARETTES FINE TOBACCOS | 3,430,544 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |
| <br>MARLBORO VIRGINIA BLEND FINE TOBACCOS 20 CLASS A CIGARETTES | 3,430,534 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
|   MARLBORO VIRGINIA BLEND 20 CLASS A CIGARETTES FINE TOBACCOS | 3,430,537 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |
|   MARLBORO SMOOTH 100'S MENTHOL UNIQUELY RICH & SMOOTH PM USA | 3,430,525 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |
|   MARLBORO SMOOTH 100'S MENTHOL UNIQUELY RICH & SMOOTH PM USA | 3,430,526 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
|   MARLBORO VIRGINIA BLEND 100'S 20 CLASS A CIGARETTES FINE TOBACCOS | 3,430,540 | Cl. 34: Tobacco Products, Namely, Cigarettes | May 20, 2008 | Yes |
|   MARLBORO VIRGINIA BLEND 100'S VIRGINIA LEAF. 400 YEARS AGO PERFECTED IN VIRGINIA - NOW GROWN AROUND THE WORLD. TODAY, HAND SELECTED VIRGINIA TOBACCOS MAKE OUR ONLY SINGLE LEAF BLEND UNIQUE. MARLBORO VIRGINIA BLEND. ENJOY THE CRISP, MELLOW TASTE AND EASY FINISH. FINE TOBACCOS 20 CLASS A CIGARETTES | 3,457,061 | Cl. 34: Tobacco Products, Namely, Cigarettes | Jul. 01, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
|  <br><br>FINE TOBACCOS MARLBORO VIRGINIA BLEND 100'S VIRGINIA LEAF. 400 YEARS AGO PERFECTED IN VIRGINIA NOW GROWN AROUND THE WORLD. TODAY, HAND-SELECTED VIRGINIA TOBACCOS MAKE OUR ONLY SINGLE LEAF BLEND UNIQUE. MARLBORO VIRGINIA BLEND. ENJOY THE CRISP, MELLOW TASTE AND EASY FINISH. 20 CLASS A CIGARETTES | 3,457,060 | Cl. 34: Tobacco Products, Namely, Cigarettes | Jul. 01, 2008 | Yes |
|  <br><br>MARLBORO VIRGINIA BLEND 20 CLASS A CIGARETTES FINE TOBACCOS VIRGINIA LEAF. 400 YEARS AGO PERFECTED IN VIRGINIA NOW GROWN AROUND THE WORLD. TODAY, HAND-SELECTED VIRGINIA TOBACCOS | 3,483,682 | Cl. 34: Tobacco Products, Namely, Cigarettes | Aug. 12, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
| MAKE OUR ONLY SINGLE LEAF BLEND UNIQUE. MARLBORO VIRGINIA BLEND. ENJOY THE CRISP, MELLOW TASTE AND EASY FINISH. | | | | |
|  MARLBORO VIRGINIA BLEND FINE TOBACCOS VIRGINIA LEAF. 400 YEARS AGO PERFECTED IN VIRGINIA - NOW GROWN AROUND THE WORLD. TODAY, HAND-SELECTED VIRGINIA TOBACCOS MAKE OUR ONLY SINGLE LEAF BLEND UNIQUE. MARLBORO VIRGINIA BLEND. ENJOY THE CRISP, MELLOW TASTE AND EASY FINISH. 20 CLASS A CIGARETTES | 3,483,680 | Cl. 34: Tobacco Products, Namely, Cigarettes | Aug. 12, 2008 | Yes |
|  MARLBORO SEVENTY-TWOS PM USA | 3,533,463 | Cl. 34: Tobacco Products, Namely, Cigarettes | Nov. 18, 2008 | Yes |

| Mark | Reg. No. | Goods and Services | Reg. Date | Incontestable? |
|---|---|---|---|---|
|   MARLBORO SEVENTY-TWOS PM USA | 3,533,467 | Cl. 34: Tobacco Products, Namely, Cigarettes | Nov. 18, 2008 | Yes |
| Marlboro | 4,171,817 | Cl. 34: Tobacco Products, Namely, Cigarettes | Mar. 9, 2011 | Yes |
| MARLBORO SOUTHERN CUT | 4,108,428 | Cl. 34: Tobacco Products, Namely, Cigarettes | Mar. 6, 2012 | Yes |
| MARLBORO NXT | 4,454,721 | Cl. 34: Tobacco Products, Namely, Cigarettes | Dec. 24, 2013 | Yes |
| MARLBORO SLATE | 4,642,487 | Cl. 34: Tobacco products, namely, cigarettes | Nov. 18, 2014 | Yes |
| MARLBORO MIDNIGHT | 4,663,474 | Cl. 34: Tobacco products, namely, cigarettes | Dec. 30, 2014 | Yes |
| MARLBORO | 5,379,044 | Cl. 34: Tobacco Products, namely, Cigarettes | Jan.16, 2018 | Yes |

47. True and correct copies of Philip Morris's federal trademark registrations and associated TSDR information for these marks are attached as Exhibits 1–29 to the Complaint. These registered marks are referred to collectively throughout this Complaint as the "MARLBORO Marks".

48. Each of Philip Morris's registrations for the MARLBORO Marks is valid and subsisting on the Principal Register and has been since its respective registration date.

49. All but one of Philip Morris's twenty-nine registrations have obtained incontestable status under the Lanham Act, 15 U.S.C. § 1065. As such, twenty-eight are conclusive evidence of the validity of the MARLBORO Marks, of Philip Morris's ownership of the MARLBORO Marks, and of Philip Morris's exclusive right to use the MARLBORO Marks in connection with the registered categories of products in the United States. Philip Morris's remaining registration is likewise prima facie evidence of the same.

**Don Abram Harris Cigars' Willful Violation of Philip Morris's Trademark Rights**

50. Defendant Don Abrams Harris Cigars LLC is a company that holds itself out as marketing, selling, and offering to sell cigar and cigar-related products.

51. Don Abram Harris Cigars is licensed by the State of Maryland to manufacture and sell tobacco products.

52. For nearly twenty years, Don Abram Harris Cigars has marketed and sold its products under the brands DON ABRAM HARRIS and DON ABRAM HARRIS CIGARS.

53. Upon information and belief, Don Abram Harris Cigars' first offering was named "En Passant" but only bore the DON ABRAM HARRIS CIGARS brand.

54. Since then, Don Abram Harris Cigars has marketed and sold cigars using the names "Presidential Reserve," "El Jefe," "Consigliere," "Unity 24," "Lucille's Baby," and "America 250."

55. With the exception of a limited release cigar prominently labeled with the Greek letters and other indicia of the Omega Psi Phi fraternity, upon information and belief, Don Abram Harris Cigars' offerings prior to 2025 did not evoke other brands, much less Philip Morris's famous MARLBORO Marks.

56. In or around January 2025, without seeking permission from Philip Morris, Don Abram Harris Cigars decided to pivot and begin offering products using Philip Morris's famous MARLBORO Marks, specifically selecting MARLBORO MAN to leverage the brand value of Philip Morris's MARLBORO brands and to harken back to Philip Morris's iconic "Marlboro® Man" advertising campaign, which itself was designed to raise the recognition and popularity of the MARLBORO brand.

57. Don Abram Harris Cigars' website features a press release dated January 1, 2025 <donabramharris.com/2025/01/01/marlboro-man/>, which announces the launch of Don Abram Harris Cigars' infringing MARLBORO MAN cigars, uses the MARLBORO MAN name to describe the product, and displays several images of the MARLBORO MAN-branded cigars and packaging.

Marlboro Man

by Jeffrey Biggs | Jan 1, 2025 | Our Cigars, Releases | 0 comments




58. Don Abram Harris Cigars submitted a press release to Pinion Newswire <pinionnewswire.com/press-release/the-plot-thickens-don-abram-harris-honors-his-fathers-legacy-with-a-historic-launch-at-pca-2025/> on or about March 11, 2025, referring to its launch of MARLBORO MAN-branded cigars and referring to them as “The Real Marlboro Man.”

59. Don Abram Harris Cigars’ Pinion Newswire press release was posted in video form as a “Short Documentary” on YouTube on or about March 18, 2025 <youtube.com/watch?v=Ad5wgzeNZ6U>.

60. Upon information and belief, Don Abram Harris Cigars marketed, displayed and distributed MARLBORO MAN-branded cigars at the Premium Cigar Association (PCA) Trade Show in New Orleans, Louisiana on or about April 11–14, 2025.

61. Don Abram Harris Cigars’ principal, Abram Harris, filed an application to register the MARLBORO MAN mark with the USPTO, claiming use of the same in commerce since

March 11, 2025, with respect to "Cigars; Cigar boxes" as well as an intent to expand that brand to "Cigar cases; Cigar clippers; Cigar cutters; Cigar humidors; Cigar lighters; Cigar nubbers; Cigar pouches; Cigar humidifiers; Humidified cigar boxes; Cigar tubes; Cigar punchers; Cigar wraps; Cigar holders." Specimens of use filed with the application are shown immediately below:








62. Don Abram Harris Cigars' use of the MARLBORO MAN brand immediately evokes Philip Morris's famous, century-old MARLBORO brand and the highly successful "Marlboro® Man" advertising campaign that helped establish the MARLBORO brand as a famous brand.

63. Don Abram Harris Cigars' use of the MARLBORO MAN brand falsely suggests an association of Don Abram Harris Cigars with the source of MARLBORO-branded tobacco products—*i.e.*, Philip Morris.

64. Upon information and belief, at the time it launched its MARLBORO MAN-branded cigars, Don Abram Harris Cigars had knowledge that its MARLBORO MAN-branded cigars immediately evoke Philip Morris's famous, century-old MARLBORO brand and the highly

successful "Marlboro® Man" advertising campaign that helped establish the MARLBORO brand as a famous brand.

65. Upon information and belief, at the time it launched its MARLBORO MAN-branded cigars, Don Abram Harris Cigars had knowledge that its MARLBORO MAN-branded cigars falsely suggest an association of Don Abram Harris Cigars with the source of MARLBORO-branded tobacco products—*i.e.*, Philip Morris.

66. Upon information and belief, Don Abram Harris Cigars adopted and began using the MARLBORO MAN brand with the intent of drawing upon the recognition and goodwill in Philip Morris's famous, century-old MARLBORO brand and the highly successful "Marlboro® Man" advertising campaign for its own gain.

67. Upon information and belief, Don Abram Harris Cigars adopted and began using the MARLBORO MAN brand with the intent of falsely suggesting an association between Don Abram Harris Cigars and the source of MARLBORO-branded tobacco products—*i.e.*, Philip Morris.

68. Don Abram Harris Cigars is taking all of these steps to falsely associate its products with Philip Morris and the famous MARLBORO brand, including use of actual infringing and dilutive marks, even though Don Abram Harris Cigars has knowledge that it does not own the formula or technology that makes MARLBORO tobacco products so high-quality and world-renowned.

69. On June 16, 2025, Philip Morris sent Don Abram Harris Cigars a letter requesting Don Abram Harris Cigars stop all use of the MARLBORO MAN Mark. Although needing little explanation for its reasons due to Philip Morris's significant, senior rights in the famous MARLBORO Marks, Philip Morris nevertheless explained the basis for its concerns repeatedly

and offered for months in good faith to allow Don Abram Harris Cigars to rebrand with no business disruption and without the need for legal action.

70. Don Abram Harris Cigars has persisted in its adoption and use of the infringing and dilutive MARLBORO MAN mark despite knowing within months of launch that Philip Morris objected to the same.

71. In fact, rather than voluntarily discontinue its infringing and dilutive acts, Don Abram Harris Cigars claimed to own the MARLBORO MAN mark and demanded monetary payment ***from*** Philip Morris.

72. Not only did Philip Morris advise Don Abram Harris Cigars of its senior rights in the MARLBORO Marks, the Trademark Office did as well.

73. On September 13, 2025, the Trademark Office issued a Nonfinal Office Action, rejecting Mr. Harris's application to register the MARLBORO MAN mark due to a likelihood of confusion with three of Philip Morris's registered MARLBORO Marks.

74. Still, Don Abram Harris Cigars did not discontinue its infringing and dilutive use.

75. On or about October 18, 2025, Don Abram Harris Cigars posted another press release to its website <donabramharris.com/2025/10/18/trademark-review-underway-for-marlboro-man-cigar> entitled "Trademark Review Underway for Marlboro Man Cigar."

76. According to its October 18, 2025 press release, as of that date Don Abram Harris Cigars held 22,680 boxes of 20 cigars each of MARLBORO MAN-branded cigars, which Don Abram Harris Cigars continued to offer for sale.

77. On or about March 4, 2026, Don Abram Harris Cigars posted another press release to its website <donabramharris.com/2026/03/04/don-abram-harris-cigars-announces-acquisition-

of-historic-maryland-tobacco-facility> entitled "Don Abram Harris Cigars Announces Acquisition of Historic Maryland Tobacco Facility."

78. In its March 4, 2026 press release Don Abram Harris Cigars further sought to benefit from a perceived association with Philip Morris, asserting that the property it planned to acquire is where "Philip Morris USA" used to purchase tobacco.

79. In its March 4, 2026 press release Don Abram Harris Cigars asserted that it would distribute its MARLBORO MAN-branded cigars from the property it planned to acquire. Indeed, the MARLBORO MAN cigar is the first product identified among a list of four "flagship and specialty products."

80. Mr. Harris submitted a version of Don Abram Harris Cigars' March 4, 2026 press release to Pinion Newswire <pinionnewswire.com/press-release/don-abram-harris-cigars-unveils-landmark-acquisition-of-historic-30000-sq-ft-tobacco-distribution-facility-in-hughesville-maryland> on or about March 5, 2026.

81. On or about March 9, 2026, a video version of Don Abram Harris Cigars' March 4, 2026 press release was posted on YouTube <youtube.com/watch?v=O0urm2QDPyI> as a "Pinion Video Release" entitled "Historic Tobacco Landmark Acquired for Major Cigar Expansion."

82. The March 9, 2026 YouTube video refers to Don Abram Harris Cigars' MARLBORO MAN-branded cigar as one of the company's "flagship cigars."

83. On or about June 7, 2026, Don Abram Harris Cigars posted a purported "Customer Review" to its website <donabramharris.com/2026/06/07/customer-review-a-perfect-pairing-with-the-marlboro-man> entitled "A Perfect Pairing with the Marlboro Man."

84. There can be no question that Don Abram Harris Cigars' entire purpose in using MARLBORO MAN to market and sell tobacco products is to deceive consumers—*i.e.*, it adopted a mark so resembling Philip Morris's MARLBORO Marks with the hope that consumers would purchase Don Abram Harris Cigars' tobacco products based on a mistaken belief that they originate from, are sponsored by or affiliated with, or are otherwise connected to Philip Morris and/or Philip Morris's famous MARLBORO brand, when they are not.

85. There also can be no question that consumers encountering Don Abram Harris Cigars' MARLBORO MAN mark will immediately recall Philip Morris's famous MARLBORO brand and mistakenly believe that Don Abram Harris Cigars' products originate from, are sponsored by or affiliated with, or are otherwise connected to Philip Morris and the famous MARLBORO Marks—*i.e.*, the marks under which the most popular brand of tobacco products in the world are sold—when they are not.

86. Yet even if confusion between MARLBORO branded tobacco products and MARLBORO MAN brand cigars was not likely (which it is), Don Abram Harris Cigars' use of MARLBORO MAN is also dilutive of the famous MARLBORO Marks, both by blurring and tarnishment.

87. Philip Morris's century-long use of MARLBORO and its extensive federal registrations dating back to 1908 for the same, give Philip Morris significant nationwide priority in the MARLBORO Marks (and any MARLBORO-formative marks) over Don Abram Harris Cigars.

88. The MARLBORO Marks were famous long before Don Abram Harris Cigars began using MARLBORO MAN.

**Harm to Philip Morris and the Public**

89. Don Abram Harris Cigars' conduct described above demonstrates both its willful disregard for Philip Morris's century-old intellectual property rights and its intentional and deliberate attempts to capitalize on the goodwill embodied in the famous MARLBORO Marks for its own financial gain and to Philip Morris's detriment.

90. Philip Morris has suffered, and will continue to suffer, reputational harm as a result of Don Abram Harris Cigars' conduct. As noted above, consumers immediately associate the famous MARLBORO Marks with Philip Morris and therefore will immediately ascribe to Philip Morris any faults, defects, or other issues and disappointments with Don Abram Harris Cigars' goods and services offered and sold in connection with the MARLBORO MAN mark.

91. Philip Morris has no control over the quality/types of ingredients included in Don Abram Harris Cigars' goods offered and sold in connection with the MARLBORO MAN mark, or the means used to produce them. This lack of control opens Philip Morris up to further injury and harm should Don Abram Harris Cigars include ingredients that are of poor quality, use production methods that are unappealing to consumers, and/or fall short of the high-quality consumers of the real MARLBORO brand have come to expect.

92. Furthermore, tobacco is a highly regulated industry that is subject to strict rules for how, where, and when products can be marketed and sold. In addition, Philip Morris is a signatory to the 1998 Master Settlement Agreement and related settlement agreements with all fifty states and territories, further restricting the ways in which its products can be advertised and marketed in perpetuity. Violation of these regulations carries with it not only the risk of severe sanctions imposed by the federal government, but also consequences for breaching its settlement agreements with state governments. This is all in addition to the risk of reputational harm within the industry

and among the general public. Don Abram Harris Cigars' unlawful conduct described herein therefore carries the additional risk that any non-compliance or perceived non-compliance of MARLBORO MAN-branded products will be unfairly ascribed to Philip Morris instead of Don Abram Harris Cigars.

93. Harm stemming from Don Abram Harris Cigars' conduct goes beyond that caused by the likelihood of confusion Don Abram Harris Cigars' use of MARLBORO MAN creates. Don Abram Harris Cigars' use of MARLBORO MAN also independently dilutes, by blurring and/or tarnishing, the famous MARLBORO Marks, thereby jeopardizing Philip Morris's substantial goodwill and investment in those Marks.

94. Philip Morris is and will continue to be irreparably harmed by Don Abram Harris Cigars' misconduct as set forth above unless Don Abram Harris Cigars is enjoined by the Court.

**COUNT I**
**Federal Trademark Infringement**
**Lanham Act (15 U.S.C. § 1114)**

95. Philip Morris hereby incorporates by reference the previous paragraphs as though expressly stated herein.

96. Philip Morris's famous MARLBORO Marks are valid, protectible, federally registered, incontestable marks that belong to Philip Morris.

97. Don Abram Harris Cigars is, without Philip Morris's permission or authorization, intentionally and willfully using the MARLBORO MAN mark, which is confusingly similar to Philip Morris's famous MARLBORO Marks, in commerce in the United States in connection with the sale, offering for sale, distribution, and/or advertising of goods and services, including but not limited to tobacco products, that do not originate with and are not sponsored by or affiliated with Philip Morris.

98. Don Abram Harris Cigars is applying the MARLBORO MAN mark, which is confusingly similar to Philip Morris's MARLBORO Marks, in marketing materials intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods and services, including but not limited to tobacco products, that are not sponsored by or affiliated with Philip Morris.

99. Don Abram Harris Cigars' actions, including without limitation by selling goods and services in trademark classes registered by Philip Morris, or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source or origin of the goods offered by Don Abram Harris Cigars in connection with the MARLBORO MAN mark, in that customers are likely to believe that those goods offered by Don Abram Harris Cigars in connection with a mark that is virtually identical to Philip Morris's famous MARLBORO Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Philip Morris.

100. Don Abram Harris Cigars' actions are likely to cause confusion, mistake, or deception, in that customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between Don Abram Harris Cigars and/or the goods provided by Don Abram Harris Cigars in connection with the MARLBORO MAN mark, on the one hand, and Philip Morris and the famous MARLBORO Marks, on the other hand, when there is not.

101. The likely confusion, mistake, or deception caused by Don Abram Harris Cigars is willful and is in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

102. As a direct and proximate result of the likely confusion, mistake, or deception, Philip Morris has suffered and will continue to suffer irreparable harm if Don Abram Harris Cigars' conduct is not enjoined.

103. Furthermore, in light of the fact that Don Abram Harris Cigars has caused and will continue causing substantial injury to the public and Philip Morris, Philip Morris is entitled injunctive relief as well as to actual damages, Don Abram Harris Cigars' profits, enhanced profits, further damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT II**
**Federal Unfair Competition and False Designation of Origin**
**Lanham Act (15 U.S.C. § 1125)**

104. Philip Morris hereby incorporates by reference the previous paragraphs as though expressly stated herein.

105. Philip Morris's famous MARLBORO Marks are inherently distinctive identifiers of source that consumers identify with Philip Morris, and each has enjoyed significant recognition by the consuming public as source identifiers of Philip Morris long before Don Abram Harris Cigars' actions addressed by the Complaint began.

106. Don Abram Harris Cigars' actions constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, licensing, approval, endorsement, and/or affiliation of Don Abram Harris Cigars and/or the goods provided by Don Abram Harris Cigars, in that customers are likely to believe that such goods are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Philip Morris and/or the famous MARLBORO Marks.

107. Don Abram Harris Cigars' actions are likely to cause confusion, mistake, or deception, in that customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between Don Abram Harris Cigars and/or the goods provided by Don Abram Harris Cigars in connection with the MARLBORO MAN mark, on the one hand, and Philip Morris and/or the famous MARLBORO Marks, on the other hand, when there is not.

108. Don Abram Harris Cigars has engaged in this conduct for the purpose of misleading consumers into believing that Don Abram Harris Cigars' products are sponsored by, affiliated with, or otherwise connected to the famous MARLBORO brand.

109. The likely confusion, mistake, or deception caused by Don Abram Harris Cigars is willful and is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

110. As a direct and proximate result of the likely confusion, mistake, or deception, Philip Morris has suffered and will continue to suffer irreparable harm if Don Abram Harris Cigars' conduct is not enjoined.

111. Furthermore, in light of the fact that Don Abram Harris Cigars has caused and will continue causing substantial injury to the public and Philip Morris, Philip Morris is entitled injunctive relief as well as to actual damages, Don Abram Harris Cigars' profits, enhanced profits, further damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT III
## Federal Trademark Dilution
## Lanham Act (15 U.S.C. § 1125(c))

112. Philip Morris hereby incorporates by reference the previous paragraphs as though expressly stated herein.

113. The MARLBORO Marks are famous trademarks within the meaning of 15 U.S.C. § 1125(c) and became famous well before Don Abram Harris Cigars began using the Infringing Mark in connection with its goods. The MARLBORO Marks are advertised and used extensively throughout the United States and are highly recognized by the trade and consuming public. Further, Philip Morris actively polices the use of those Marks by third parties.

114. Don Abram Harris Cigars is engaged in commercial use of the MARLBORO MAN mark.

115. Don Abram Harris Cigars' actions are disparaging and damaging and are likely to cause dilution of the MARLBORO Marks through, at the very least, blurring and/or tarnishing.

116. Don Abram Harris Cigars' actions are likely to dilute by blurring the MARLBORO Marks by impairing the distinctiveness of those Marks. The famous MARLBORO Marks are household names and unique to Philip Morris in the United States.

117. Don Abram Harris Cigars' actions are also likely to dilute by tarnishing the MARLBORO Marks by at least using the MARLBORO MAN mark to promote and sell goods that do not live up to the high standards set for goods and services offered under the MARLBORO Marks. There is also further risk of dilution by tarnishing to the extent Don Abram Harris Cigars and/or its MARLBORO MAN-branded products become the target of regulatory investigation and/or sanctions by both the federal and state governments.

118. As a result of Don Abram Harris Cigars' likely dilution, Philip Morris has suffered, and will continue to suffer, irreparable injury and substantial damages, while Don Abram Harris Cigars has been and will continue to be unjustly enriched.

119. Upon information and belief, Don Abram Harris Cigars' dilution of the MARLBORO Marks is and was willful.

120. The likely dilution of the MARLBORO Marks caused by Don Abram Harris Cigars violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and will continue if Don Abram Harris Cigars is not enjoined.

121. Philip Morris is entitled to its actual damages, Don Abram Harris Cigars' profits, enhanced profits, further damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116, 1117, and 1125.

**COUNT IV**
**Common Law Infringement Unfair Competition**

122. Philip Morris hereby incorporates by reference the previous paragraphs as though expressly stated herein.

123. Philip Morris is the owner of all rights and title to, and has valid and protectible prior rights in, MARLBORO, including but not limited to the MARLBORO Marks.

124. Philip Morris engages in the marketing, sale, and distribution of tobacco products in connection with the famous MARLBORO Marks, and previously for decades used the iconic MARLBORO MAN advertising campaign. Philip Morris engaged in these actions long before Don Abram Harris Cigars began its infringing use, as alleged herein.

125. Don Abram Harris Cigars is using the MARLBORO MAN mark, which is confusingly similar to Philip Morris's famous MARLBORO Marks, in commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods and services, including but not limited to tobacco products, that do not originate with and are not sponsored by or affiliated with Philip Morris.

126. Don Abram Harris Cigars is applying the MARLBORO MAN mark, which is confusingly similar to Philip Morris's MARLBORO Marks, in marketing materials intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising

of goods and services, including but not limited to tobacco products, that are not sponsored by or affiliated with Philip Morris.

127. Don Abram Harris Cigars' actions, including without limitation by selling goods and services in trademark classes registered by Philip Morris, or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or as to the source of origin of the goods offered by Don Abram Harris Cigars in connection with the MARLBORO MAN mark, in that customers and potential customers are likely to believe that Don Abram Harris Cigars and/or those goods offered by Don Abram Harris Cigars in connection with a mark that is virtually identical to Philip Morris's famous MARLBORO Marks are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to Philip Morris or the famous MARLBORO Marks.

128. Don Abram Harris Cigars' actions are likely to cause confusion, mistake, or deception, in that customers are likely to believe there is sponsorship, approval, licensing, affiliation, association, or some legitimate connection between Don Abram Harris Cigars and/or the goods provided by Don Abram Harris Cigars in connection with the MARLBORO MAN mark, on the one hand, and Philip Morris and/or the MARLBORO Marks, on the other hand, when there is not.

129. The likely confusion, mistake, or deception caused by DON ABRAM HARRIS CIGARS is willful and is in violation of the common law.

130. Don Abram Harris Cigars' willful and deliberate acts described herein have caused injury and damage to Philip Morris and have caused irreparable injury to Philip Morris's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Philip Morris has no adequate remedy at law. Philip Morris is therefore entitled to injunctive relief.

131. Philip Morris is also entitled to monetary relief, including but not limited to actual damages, Don Abram Harris Cigars' profits, punitive damages, and an award of costs and attorneys' fees.

## JURY DEMAND

Philip Morris respectfully requests a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Philip Morris prays for judgment against Don Abram Harris Cigars as follows:

A. Preliminarily and permanently enjoining and restraining Don Abram Harris Cigars and its directors, members, officers, agents, servants, employees, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under any of them, at first during the pendency of this action and thereafter perpetually from:

i. committing any acts of trademark infringement, trademark dilution, unfair competition, and implying a false designation of origin or a false description or representation with respect to the famous MARLBORO Marks;

ii. using in any manner with Don Abram Harris Cigars' goods and services the MARLBORO MAN mark and/or any mark, logo, design, word, name, or other source identifier that is confusingly similar to the famous MARLBORO Marks, including but not limited to on or in packaging, labels, signs, literature, display cards, Internet website, or other packaging, advertising, or promotional materials;

iii. using any trademark, name, logo, design, or source designation of any kind on or in connection with Don Abram Harris Cigars' goods or services that is likely

to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Philip Morris, or are sponsored or authorized by Philip Morris, or are in any way connected or related to Philip Morris;

iv. making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship or endorsement by, or connection to Philip Morris;

v. passing off, palming off, or assisting in passing off or palming off Don Abram Harris Cigars' services and goods as those of Philip Morris, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

vi. using any designation that is likely to disparage, tarnish or dilute the famous MARLBORO Marks;

B. Requiring that Don Abram Harris Cigars be ordered to cease offering for sale, marketing, promoting, and selling and to recall all products bearing the MARLBORO MAN mark that are in Don Abram Harris Cigars' possession or have been shipped by Don Abram Harris Cigars or under its authority, to any store, affiliate, subsidiary, business, wholesaler, distributor, retailer, or marketer, and also to deliver to each such entity a copy of this Court's order as it relates to said injunctive relief against Don Abram Harris Cigars;

C. Requiring Don Abram Harris Cigars to destroy or deliver up to Philip Morris any and all infringing products, bags, boxes, labels, tags, signs, packages, receptacles, containers, signs, packaging materials, printing plates, and advertising or promotional materials and any

materials used in the preparation thereof, which in any way unlawfully use or make reference to the MARLBORO MAN mark, or to any of Philip Morris's MARLBORO Marks;

D. Requiring that Don Abram Harris Cigars, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon Philip Morris's counsel a written report under oath setting forth details of the manner in which Don Abram Harris Cigars has complied with the Court's order pursuant to paragraphs A through C above;

E. Requiring Don Abram Harris Cigars to pay over to Philip Morris all damages sustained by Philip Morris as a result of Don Abram Harris Cigars' willful infringement, dilution, and unfair competition, and ordering that the amount of damages awarded to Philip Morris be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(b) and 1125 and the common law;

F. Ordering that Philip Morris recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117 and the common law;

G. Awarding Philip Morris punitive damages; and

H. Awarding Philip Morris such other and further relief as this Court deems just and proper.

Dated this 17th day of August, 2026.

Respectfully submitted,

**MCGUIREWOODS LLP**

*<u>/s/ Paul Schoenhard</u>*
Paul Schoenhard (VA Bar No. 65915)
888 16th Street N.W., Suite 500
Washington, D.C. 20006

Telephone: (202) 857-1700
Fax: (202) 857-1737
pschoenhard@mcguirewoods.com

Amanda L. DeFord (VA Bar No. 85511)
Caroline Schmidt Burton (VA Bar No. 91647)
800 East Canal Street
Richmond, Virginia 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
adeford@mcguirewoods.com
cburton@mcguirewoods.com

*Counsel for Philip Morris USA Inc.*